SO ORDERED.

Dated: September 4, 2015

Daniel P. Collins, Chief Bankruptcy Judge
_____

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br>**WESTPARK ONE, LLC**,<br>　　　　Debtor. | Chapter 7 Proceedings<br>Case No.: 2:13-bk-02107-DPC<br>Adversary No. 2:13-ap-00486-DPC |
| **GUN BO, LLC**,<br>　　　　Plaintiff,<br>　v.<br>**WESTPARK ONE, LLC, and CWI INVESTOR HOLDINGS THREE, LLC,**<br>　　　　Defendants. | **ORDER GRANTING TRUSTEE'S MOTION FOR SUMMARY JUDGMENT**<br><br>**NOT FOR PUBLICATION** |
| **DAVID M. REAVES, Chapter 7 Trustee for the Estate of CW Capital Fund One, LLC,**<br>　　　　Third-Party Plaintiff,<br>　v.<br>**GUN BO, LLC, and CWI INVESTOR HOLDINGS THREE, LLC,**<br>　　　　Third-Party Defendants. | |

　　　　David Reaves, Chapter 7 Trustee of the CW Capital Fund One bankruptcy estate, moved to intervene in Gun Bo's fraudulent-transfer adversary proceeding against CWI Investor Holdings Three and Westpark One. Reaves then moved for summary judgment, asserting the estate's ownership of the fraudulent-transfer claims. Gun Bo

1

cross-moved for summary judgment on the same issue.  The Court heard oral argument on both summary judgment motions and took the matter under advisement.  The Court now rules in favor of Trustee Reaves.

**I.  Background**

Gun Bo, LLC ("Gun Bo") sued John and Susan Cork in state court on November 20, 2008, alleging breach of their personal guaranty on a loan Gun Bo had extended to CW Capital Fund One, LLC ("CW Capital").  On December 29, 2008, CW Capital transferred a parcel of land ("Property") to Westpark One, LLC ("Westpark").  This Court previously ruled that CW Capital's transfer of the Property to Westpark ("Transfer") was constructively fraudulent (DE 116)[1] under Arizona law.

On January 21, 2009, Gun Bo amended its state-court complaint to add CW Capital as a defendant.  On March 1, 2009, Westpark encumbered the Property with a deed of trust ("DOT") in favor of CWI Investor Holdings Three, LLC ("CWI"), allegedly to secure a $10 million loan from CWI.  The Court previously ruled that the DOT was constructively fraudulent and void (DE 116).

On July 15, 2009, the state court ruled in favor of Gun Bo against CW Capital and others, and entered judgment in the amount of $5.6 million plus interest ("Judgment") on Gun Bo's breach of guaranty claim.  Gun Bo recorded its Judgment on August 3, 2009.  Gun Bo later learned of the Transfer, and successfully moved the state court for a preliminary injunction against any further transfer or encumbrance of the Property on November 1, 2010.  On August 27, 2012, Gun Bo sued Westpark and CWI to avoid the Transfer and DOT (collectively "Claims"), and recorded a *lis pendens* on August 28.  Westpark subsequently filed for bankruptcy on February 15, 2013.  CW Capital filed its voluntary petition on February 19, 2014.  Gun Bo removed the state

---

[1] All docket entry cites refer to the docket number in the adversary proceeding, 2-13-ap-00486-DPC, unless noted otherwise.

court fraudulent-transfer suit against Westpark and CWI to this Court (DE 1). That removed action is the adversary proceeding before this Court.

Chapter 7 Trustee David Reaves ("Trustee") intervened on behalf of CW Capital's bankruptcy estate (DE 99) and moved this Court for summary judgment on the issue of ownership of the Claims (DE 158). Gun Bo cross-moved (DE 160) for summary judgment, and the Court heard oral argument on the motions (DE 173).[2]

## II. Issue

The issue before this Court is whether Gun Bo is a creditor secured by the Property or simply an unsecured creditor of this estate. The answer to this question determines whether the Trustee has standing to prosecute the Claims. If Gun Bo's Judgment against CW Capital attached to the Property when Gun Bo recorded the Judgment on August 3, 2009, despite the Transfer occurring before Gun Bo recorded, Gun Bo is secured by the Property and Trustee has no standing under § 544(b).[3] Alternatively, if the Judgment did not attach, but left Gun Bo with an equitable lien on the Property, Gun Bo is secured and Trustee has no standing. Absent a favorable ruling on one of these two theories, Gun Bo is unsecured and the Trustee has standing to prosecute the Claims for the benefit of the unsecured creditors of the CW Capital bankruptcy estate.

## III. Law

### A. Summary Judgment Standard

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate when the record confirms "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477

---

[2] The parties concede (and the Court hereby holds) that the Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334.
[3] All section references refer to the Bankruptcy Code, Title 11 of the United States Code.

3

U.S. 317, 322, 105 S.Ct. 2548 (1986). Rule 56 applies to bankruptcy adversary proceedings via Federal Rule of Bankruptcy Procedure 7056.

### B. Arizona's UFTA

Arizona adopted the Uniform Fraudulent Transfer Act ("UFTA"), which is codified in A.R.S. §§ 44-1001, *et seq*. This Court has already determined both the Transfer and the DOT were constructively fraudulent under A.R.S. § 44-1005, and that CWI was not a good-faith transferee of the DOT under A.R.S. § 44-1008 (DE 116).

### C. Recording Arizona Judgment Liens

Arizona's judgment-recording statute, A.R.S. § 33-961(A), states in relevant part:

> A copy of the judgment of a court, certified by the clerk, shall be filed and recorded in the office of the county recorder in each county where the judgment creditor desires the judgment to become a lien upon the real property of the judgment debtor before the judgment shall become a lien upon or in any manner affect or encumber the real property of the judgment debtor, or any part of the real property of the judgment debtor.

Under A.R.S. § 33-964(A), in all but two circumstances not relevant to this case:

> [F]rom and after the time of recording as provided in section 33-961, a judgment shall become a lien for a period of five years from the date it is given, on all real property of the judgment debtor except real property exempt from execution, including homestead property, in the county in which the judgment is recorded, whether the property is then owned by the judgment debtor or is later acquired.

## IV. The Parties' Arguments

### A. Legal Effect of Fraudulent Transfers as to Creditors

Gun Bo urges that transfers in fraud of creditors are *void ab initio* under Arizona law, relying largely on *Rountree v. Marshall*, 6 Ariz. 413, 59 P. 109 (1899) (judgment

4

Case 2:13-ap-00486-DPC    Doc 174    Filed 09/04/15    Entered 09/04/15 16:39:39    Desc
Main Document    Page 4 of 12

creditor can levy execution on property judgment debtor fraudulently conveyed, without first vacating the transfer) and *Rowe v. Schultz*, 131 Ariz. 536, 642 P.2d 881 (App. 1982) (judgment debtor's unrecorded transfer of property was void as to judgment creditor who recorded before transferee recorded its deed). Gun Bo argues that *Luhrs v. Hancock*, 181 U.S. 567, 21 S.Ct. 726 (1901), a case Trustee cites for support, is no longer binding on Arizona courts and is contrary to subsequent Arizona decisions on the same issue, citing *Mason Dry Goods Co. v. Ackel*, 30 Ariz. 7, 13 (1926).[4] Gun Bo argues that the Transfer, because it was constructively fraudulent, did not divest CW Capital of title to the Property. Accordingly, Gun Bo contends the Judgment attached to the Property when Gun Bo recorded its Judgment, making Gun Bo a secured creditor.[5]

Trustee contends that fraudulent transfers are merely voidable under the plain language of Arizona's UFTA, noting that UFTA sets out procedures for avoidance as a remedy. Trustee cites *Luhrs v. Hancock*, 181 U.S. 567, 21 S.Ct. 726 (1901) (quoting and adopting holding from *In re Estes*, 3 F. 134, 141 (D. Or. 1880)). The relevant portion of the *Luhrs* quote of *Estes* states:

> [T]he lien of a judgment which is limited by law to the property of or belonging to the judgment debtor at the time of the docketing is not nor cannot, without doing violence to this language, be held to extend to property previously conveyed by the debtor to another by deed valid and binding

---

[4] *See* note 6, *infra*.
[5] Gun Bo also cites *In re Cass*, 476 B.R. 602 (Bankr. C.D.Cal. 2012) in support of its argument that the Judgment attached as a lien despite the fact that the Transfer happened before Gun Bo recorded. Both the BAP (*In re Cass*, 2013 WL 1459272 (9th Cir. BAP, April 11, 2013)) and the Ninth Circuit (*In re Cass*, 2015 WL 2168394 (9th Cir., May 11, 2015)) subsequently affirmed the Central District. This, and the similarity of the facts from *Cass* to the instant case, would normally make *Cass* very persuasive authority. However, the California judgment lien statute at issue in *Cass* specifically states that "[a] judgment lien on real property attaches to all interests in real property in the county where the lien is created (whether present or future, vested or contingent, legal or equitable) . . . . CCP § 697.340(a) (emphases added). In *Cass,* the Central District held that debtor retained an equitable interest in the fraudulently transferred property, so that the judgment creditor's lien attached despite its recording after the transfer. Arizona's judgment lien statutes merely state that judgment liens attach "from and after the time of recording . . . to all real property of the judgment debtor," A.R.S. § 33-964(A), and that judgment creditors must file and record a judgment "before the judgment shall become a lien upon or in any manner affect or encumber the real property of the judgment debtor . . . ." A.R.S. § 33-961(A).

5

> between the parties. . . . Such a conveyance is not, as has been sometimes supposed, 'utterly void,' but it is only so in a qualified sense. Practically it is only voidable, and that at the instance of creditors proceeding in the mode prescribed by law, and even then not as against a bona fide purchaser.

*Luhrs*, 181 U.S. at 573–574. Trustee urges that *Luhrs*, a Supreme Court case deciding an appeal from Arizona's territorial-era Supreme Court, is the law in Arizona.

### B. Equitable Liens

Gun Bo argues that the actions it took to preserve its rights in the Property (filing the fraudulent-transfer lawsuit, recording the *lis pendens*, and getting a preliminary injunction) created an equitable lien on the Property that causes Gun Bo to be a secured creditor. Trustee denies Gun Bo has an equitable lien on the Property, arguing that Gun Bo has no state-law basis for making such a claim.

According to Trustee, to have an equitable lien against the Property, Gun Bo would need either: (1) a judgment granting an equitable lien; (2) a state statute imposing an equitable lien in circumstances such as Gun Bo's; or (3) to have successfully avoided the Transfer prior to CW Capital's bankruptcy petition date (February 19, 2014). Trustee notes that Gun Bo can meet none of these three conditions in support of its claim to an equitable lien on the Property. Trustee also argues that the Court is not compelled to grant equitable relief, even if it may have been available under state law, if the state court did not grant such relief pre-petition, citing *In re North American Coin & Currency, Ltd.*, 767 F.2d 1573 (9th Cir. 1985).

### C. *Caplin*

Gun Bo argues that Trustee lacks standing to prosecute the Claims because the injuries which are the bases of the Claims are personal to Gun Bo because the A.R.S. § 44-1009 statute of repose expired for the Claims pre-petition, citing *Caplin v. Marine Midland Grace Trust Co.*, 406 U.S. 416, 92 S.Ct. 1678 (1972). Because no other

6
Case 2:13-ap-00486-DPC    Doc 174    Filed 09/04/15    Entered 09/04/15 16:39:39    Desc
Main Document    Page 6 of 12

creditor could assert the Claims, Gun Bo reasons, Trustee has no standing to sue on behalf of the CW Capital estate.

Trustee responds that Gun Bo does not cite any authority for its proposition that a fraudulent-transfer claim can be personal to a creditor or is otherwise off-limits to a trustee. Trustee argues that because Gun Bo, an unsecured creditor, held the right to prosecute the Claims on the date of CW Capital's bankruptcy filing, § 544 allows Trustee to prosecute the Claims.

### D. Constitutional Arguments

Lastly, Gun Bo argues a ruling in favor of the Trustee would violate the Due Process, Bankruptcy, and Takings Clauses of the Constitution. Gun Bo urges that it has a lien on the Property, and that that lien vested either when Gun Bo recorded its judgment or when it took action to diligently preserve its rights in the Property and pursued the Claims in state court.

Trustee denies that a favorable ruling from this Court would violate Gun Bo's Constitutional rights because Gun Bo is unsecured and will be treated the same as other unsecured creditors under the Code. Trustee asserts the Claims vested exclusively in the CW Capital estate when CW Capital filed for bankruptcy, and that Gun Bo lacks the protected property interest required to implicate the Takings Clause.

## V. Analysis

### A. Fraudulent Transfers Are Merely Voidable

The Court holds that fraudulent transfers are voidable under Arizona law, not *void ab initio*. The UFTA's plain language and *Luhrs v. Hancock* strongly support this conclusion. Creditors' remedies under Arizona law include, for instance, "[a]voidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim." A.R.S. § 44-1007(A)(2) (emphasis added). The United States Supreme Court's decision in *Luhrs*, while not necessarily binding on Arizona courts interpreting Arizona

7

law,[6] is binding on this Court, and reaches a conclusion supported by the plain language of Arizona's UFTA. *Luhrs* holds that fraudulent conveyances are not "utterly void," but rather they are "only voidable, and that at the instance of creditors proceeding in the mode prescribed by law . . . ." *Luhrs v. Hancock*, 181 U.S. 567, 573–574, 21 S.Ct. 726, 729 (1901) (quoting and adopting holding from *In re Estes*, 3 F. 134, 141 (D. Or. 1880)). In Arizona, that "mode prescribed by law" implicates the remedies available under the UFTA. These remedies give no indication that fraudulent transfers are *void ab initio* as to creditors.

Gun Bo cites *Rountree* for the proposition that judgment creditors can levy execution upon fraudulently transferred property without first avoiding the transfer, making fraudulent transfers effectively *void ab initio*. *Rountree v. Marshall*, 6 Ariz. 413, 417, 59 P. 109, 110 (1899). The UFTA and *Farris* both convincingly contradict this argument. *See, e.g.*, A.R.S. § 44-1007(A)(2) (listing "avoidance of the transfer" as a remedy under UFTA); *Farris v. Advantage Capital Corp.*, 217 Ariz. 1, 170 P.3d 250 (2007) (*en banc*).

A.R.S. § 44-1007 sets out remedies under the UFTA. A.R.S. § 44-1007(B) explicitly requires a judgment creditor to get a court order (*i.e.* an order avoiding a transfer) before it can levy execution on the fraudulently transferred assets or proceeds: "Subject to [provisions not applicable here], if a creditor has obtained a judgment on a claim against the debtor, the creditor, if the court so orders, may levy execution on the asset transferred or its proceeds." This language supports the Trustee's argument that fraudulent transfers are voidable, because Arizona law requires that a judgment creditor get a court order before collecting against the transferred asset.

---

[6] *See Mason Dry Goods Co. v. Ackel*, 30 Ariz. 7, 13 (1926) ("[T]his court was bound in territorial days by the decisions of the Supreme Court of the United States. . . . but since Arizona has become a state, while we consider the federal decisions with the highest respect, we no longer are bound to follow them, save on federal questions, where we think they are wrong in principal.").

8

*Farris* further confirms that Gun Bo's proposition is not the law in Arizona. In *Farris*, the *en banc* Arizona Supreme Court stated:

> The UFTA does not require a creditor to reduce a claim to a judgment before seeking to void a debtor's allegedly fraudulent transfer of property. The UFTA allows the levy of execution when a creditor has obtained a judgment, but does not require a judgment before a creditor may seek relief from an allegedly fraudulent transfer, including avoidance. *Compare* A.R.S. § 44–1007(B) (allowing the levy of execution "if a creditor has obtained a judgment"), *with id.* § 44–1007(A)(2) (allowing creditor to seek avoidance of a transfer).

*Farris*, 217 Ariz. at 2. *Farris* stands for the proposition that a creditor need not have a <u>money</u> judgment to file an avoidance action, but <u>does</u> need an <u>avoidance</u> judgment before levying against the fraudulently transferred property or asset. This confirms that fraudulent transfers are voidable and not *void ab initio*.

The 115-year-old *Rountree* decision contradicts Arizona's current UFTA and the Arizona Supreme Court's 2007 *en banc* decision from *Farris*. The Court declines to follow it. Because the Transfer was not *void ab initio* as to Gun Bo and no court avoided it prior to CW Capital's bankruptcy filing, the Property was not real property of CW Capital at the time that Gun Bo recorded its Judgment. Gun Bo's recording of the Judgment did not create a lien on the Property.

### B. Gun Bo Had No Pre-Petition Equitable Lien

The Court next concludes that Gun Bo had no pre-petition equitable lien against the Property. The facts of this case are sufficiently distinct from the facts of the two main cases on which Gun Bo relies, *In re Farnsworth*, 384 B.R. 842 (Bankr. D. Ariz. 2008) (Marlar, J.) and *In re Lane*, 980 F.2d 601 (9th Cir. 1992). The Court rejects the applicability of these cases to Gun Bo's circumstances.

1. *In re Farnsworth*

In *Farnsworth*, the creditor filed a pre-petition suit against the debtor in state court, asserting an equitable lien on the debtor's homestead property. Debtor, the creditor's ex-fiancee, had locked him out of the house for which he had contributed $10,000 towards the down payment. The creditor recorded a *lis pendens* on the property two years prior to debtor's bankruptcy petition. After a trial, the state court judge signed a minute entry order granting creditor a $10,000 equitable lien on debtor's property and directing creditor to lodge a form of order. Before the state court judge signed the proposed order, the debtor filed bankruptcy.

Judge Marlar held that the *lis pendens* and the signed minute entry order granting creditor an equitable lien were sufficient to defeat the trustee's strong-arm powers under § 544. Judge Marlar held that the *lis pendens* caused the minute entry order to relate back to give creditor a pre-petition equitable lien which was superior to any right the trustee could claim in the property.

The crucial distinction between *Farnsworth* and the instant case is that the creditor in Farnsworth had a signed minute entry order from state court explicitly granting him an equitable lien. Gun Bo has no similar order. The recording of a *lis pendens*, by itself, does not create an equitable lien; it merely gives notice that a property is subject to litigation affecting its title, and "enable[s] the court in which the action is pending to retain the power to fully deal with such property, to the exclusion of future claimants." *Farnsworth*, 384 B.R. at 847.

2. *In re Lane*

*In re Lane*, 980 F.2d 601 (9th Cir. 1992) is also factually distinct from the case at bar. In *Lane*, as in *Farnsworth*, a creditor filed a pre-petition suit in state court requesting equitable relief (constructive trust), recorded a pre-petition *lis pendens*, and was granted a pre-petition judgment against the debtors. The creditor then recorded its

10

judgment pre-petition, but within the § 547 preference period. In the ensuing bankruptcy, the debtor disputed creditor's secured status.

The bankruptcy court found for the creditor, ruling that creditor's recording of its judgment during the preference period did not make the judgment lien an avoidable preference under § 547 because the judgment related back to the recording date of the *lis pendens*, which date was outside the preference period. The BAP reversed the bankruptcy court, and the Ninth Circuit reversed the BAP. Citing *In re McCoy*, 46 B.R. 9, 11 (Bankr. D. Ariz. 1984) for support of its interpretation of Arizona law, the Ninth Circuit held that, <u>unlike Arizona law</u>, California law provides that "a party attains an interest superior to subsequent purchasers upon recordation of the lis pendens." *Lane*, 980 F.2d at 606. In Arizona, "a party does not attain an interest superior to a subsequent purchaser until a lien has been attached to the property in the case of an attachment proceeding . . . ." *Id.* at 605–606. None of Gun Bo's pre-petition actions caused a lien, equitable or otherwise, to attach to the Property.

### C. <u>*Caplin* and Constitutional Arguments</u>

Gun Bo argues the Trustee lacks standing because Gun Bo is a secured creditor and the A.R.S. § 44-1009(A)(2) statute of repose has extinguished any other potential creditors' claims arising from the Transfer and DOT. Gun Bo contends that these two facts make the Claims personal to Gun Bo and deny the Trustee an unsecured creditor into whose shoes he can step under § 544(b). *Caplin v. Marine Midland Grace Trust Co.*, 406 U.S. 416, 428–429, 92 S.Ct. 1678, 1685 (1972). Having found that Gun Bo is unsecured, the Court rejects this argument. The Claims are not personal to Gun Bo. Gun Bo provided no authority for the specific proposition that fraudulent-transfer claims can be personal to an unsecured, non-trustee plaintiff, nor has the Court found such authority.

11

Gun Bo's constitutional arguments are unavailing because it is an unsecured creditor. As an unsecured creditor, it will share ratably in distributions to the general unsecured creditors of the CW Capital bankruptcy estate. This treatment, rather than being in violation of the Bankruptcy Clause or Code, is precisely in accord with the Code's basic policy of equal treatment of similarly situated creditors. *See In re Lockard*, 884 F.2d 1171, 1178 (9th Cir. 1989). Gun Bo received its constitutionally guaranteed due process by virtue of its opportunity to litigate its status and treatment under the Code. Gun Bo will continue to receive its due process as provided by the Code. There is no Takings Clause violation because Gun Bo had no secured rights in the Property and no legal right to prosecute the Claims, so its treatment as an unsecured creditor does not require just compensation.

## VI. Conclusion

For the reasons above, the Court grants Trustee's Motion for Summary Judgment and denies Gun Bo's Motion for Summary Judgment. Accordingly,

**IT IS ORDERED** Gun Bo's Motion for Summary Judgment is denied;

**IT IS FURTHER ORDERED** Trustee's Motion for Summary Judgment is granted in its entirety. CW Capital's estate's interest in the Property is superior to any interest of Gun Bo. The Transfer and DOT are hereby voided and Trustee is authorized to recover the Property for the benefit of the CW Capital estate under §§ 550 and 551.

**So ordered.**

**DATED AND SIGNED ABOVE.**

COPY of the foregoing mailed by the BNC and/or
sent by auto-generated mail to interested parties.